1                 UNITED STATES DISTRICT COURT

2                 EASTERN DISTRICT OF NEW YORK

3     WILLIAM HENNESSY,             .    Docket No.
                                    .    1:22-CV-01540-CBA-TAM
4          Plaintiff,               .

5             v.                    .

6     BRK BAR GROUP, LLC, ET        .
      AL.,                          .
7                                   .
           Defendants.              .
8     . . . . . . . . . . . . . .   .

9     WILLIAM HENNESSY,             .    Docket No.
                                    .    1:22-CV-01771-CBA-TAM
10         Plaintiff,               .

11            v.                    .    Brooklyn, New York
                                    .    Thursday, February 16, 2023
12    99 FRANKLIN BAR, LLC,         .    10:32 a.m.
                                    .
13         Defendant.               .
14    . . . . . . . . . . . . . .   .

15          TRANSCRIPT OF TELEPHONIC FAIRNESS HEARING
              BEFORE THE HONORABLE TARYN A. MERKL
16             UNITED STATES MAGISTRATE JUDGE

17    APPEARANCES:

18    For the Plaintiff:         Gabriel A. Levy, P.C.
                                 GABRIEL A. LEVY, ESQ.
19                               1129 Northern Boulevard
                                 Suite 404
20                               Manhasset, New York  11030
                                 516-287-3458

21    Also Present:             Josephine Hennessy, Guardian

22    Transcription Service:    Superior Reporting Services LLC
                                  P.O. Box 5032
23                                Maryville, TN 37802
                                  865-344-3150

24
      Proceedings recorded by electronic sound recording;
25    transcript produced by transcription service.

1                      P R O C E E D I N G S

2              THE CLERK:  This is civil cause for a fairness

3    hearing, Docket 22-CV-1540, Hennessy vs. BRK Bar Group, LLC,

4    et al., and Docket Number 22-CV-1771, Hennessy vs. 99

5    Franklin Bar, LLC, et al.

6              Before asking the parties to state their

7    appearance, I would like to note the following:  Persons

8    granted remote access to proceedings are reminded of the

9    general prohibition against photographing, recording, and

10   rebroadcasting of court proceedings.  Violation of these

11   prohibitions may result in sanctions including removal of

12   court-issued media credentials, restricted entry to future

13   hearings, denial of entry to future hearings, or any other

14   sanctions deemed necessary by the court.

15             Will parties please state their appearances for the

16   record?

17        (Simultaneous speech.)

18             THE COURT:  I can't hear anybody when you guys talk

19   at the same time.  Counsel, please state your appearance.

20             MR. LEVY:  Okay.  Gabriel A. Levy of Gabriel A.

21   Levy, P.C., 1129 Northern Boulevard, Manhasset, New York,

22   11030 for Plaintiff William Hennessy.

23             THE COURT:  Okay.  And who else is here?

24             MS. HENNESSY:  Josephine Hennessy.

25             THE COURT:  Okay.  Good morning to you both.

1        MS. HENNESSY:  Good morning.

2        MR. LEVY:  Good morning.

3        THE COURT:  So just want to make sure that we're

4   all able to hear each other.  So we're here today because

5   these two matters have been referred to me by Judge Amon for

6   a fairness hearing, and I think that, you know, we had

7   reviewed the papers and had some follow-up questions for you.

8        So Mr. Levy, I'd like to start by sort of getting a

9   better understanding of the, you know, relationship that you

10  have with Ms. Hennessy and Mr. Hennessy and really trying to

11  understand whether or not, in your view, Mr. Hennessy is

12  covered by the procedures that we are, you know, normally

13  required to utilize in evaluating a settlement involving

14  somebody who is not able to advocate for themselves.

15       So Mr. Levy, what are your thoughts on that?  And I

16  note in that regard that we had directed you to file the

17  appropriate affidavits that are required under CPLR 1208, and

18  you filed an attorney affidavit, but I did not see an

19  affidavit for Ms. Hennessy or Mr. Hennessy; is that correct,

20  Mr. Levy?

21       MR. LEVY:  That's correct.  I think the order only

22  required me to submit an attorney affidavit.  And it

23  says -- well, it says in the affidavit, explain the nature of

24  plaintiff's guardianship and whether plaintiff has ever been

25  judicially declared to be incompetent.  I guess I read that

1   to be --

2          THE COURT:  Nope.  It stated very clearly.  Counsel

3   for plaintiff is directed to file a proposed settlement

4   agreement accompanied by the necessary affidavits, plural, in

5   support.  See CPLR section 1208.

6          So I just am not sure why that directive was not

7   followed, and also whether you are of the view that he is not

8   a protected person?

9          MR. LEVY:  We are of that view.  Frankly speaking,

10  the rule only applies to minors and individuals that have

11  been deemed incompetent.  William Hennessy is certainly not a

12  minor, 36 years old, and he's never been deemed incompetent

13  by a court or a doctor.  So under the rules, the hearing is

14  not required.  We have had, you know, we've had one other

15  hearing of this nature in another case by the directive of

16  Judge Amon, but in that case, it was approved.  And also,

17  despite the argument that it was unnecessary, we proceeded

18  with the hearing, so we have no problem proceeding with the

19  hearing, but I think a reading of the rule basically makes it

20  clear that it's not required.

21          Also, you know, with the complications --

22          THE COURT:  Well, Mr. Levy, I have to take issue

23  with that representation a little bit.  Our local civil rule

24  is not in any way limited by New York CPLR 1207 or 1208.  All

25  our rule says is that any action by or on behalf of an infant

1    or incompetent shall not be settled or compromised without

2    leave of the court.  And the representations in the papers

3    are that he has a guardian, and that he is not able to

4    represent himself.  So where in our local rule do you think

5    there's no need to follow the hearing procedures?

6           MR. LEVY:  Well, based on my reading of the rule,

7    it seemed to only apply to infants and those deemed

8    incompetent.  Yes, he's under a guardianship, but --

9           THE COURT:  It doesn't say that, sir.  It's

10   different than the New York State 1207 provision.

11          MR. LEVY:  Okay.  I'll take a look at the 1207

12   provision.  In any event, we're happy to proceed, and if Your

13   Honor -- if you want us to supplement what's already been

14   submitted with additional affidavits, I'm more than happy to

15   do so.  If you want to conduct the hearing on another date to

16   let us submit those files, that's fine with -- the

17   affidavits, that's fine with us.  If you want to proceed

18   today and then we can submit them after the hearing, that's

19   also fine.

20          THE COURT:  Okay.  It might make sense to do it the

21   latter way if there is a need to supplement with another

22   affidavit.  I mean, the affidavit that CPLR 1208 contemplates

23   is really just an affidavit, you know, from the guardian,

24   essentially, setting forth the age of the person.  You know,

25   there's the procedural requirements set forth in the rule.

1    So if you want to start with the 1540 case, it's a

2    slightly lower docket number.  What is, you know, your

3    rationale, Mr. Levy, to conclude that this settlement is fair

4    and appropriate?

5        MR. LEVY:  Just to clarify, we're dealing with

6    Silver Light, correct?

7        THE COURT:  The defendant in the caption is BRK Bar

8    Group, LLC, and 689 Lorimer Holdings, LLC, and one of my

9    questions actually was what type of public accommodation it

10   is because the complaint does not specify.

11       MR. LEVY:  It's a restaurant.

12       THE COURT:  Okay.  So go ahead.

13       MR. LEVY:  So basically restaurants and other

14   places of public foundation that have access -- barriers for

15   access usually include three issues, at least when it comes

16   to restaurants.  The primary issue I'd say is at the entrance

17   when there's either a single step or a set of steps that

18   prevent access applying to individuals in a wheelchair.

19   Obviously, that's the biggest issue because if you can't get

20   inside, then none of the other issues matter.

21       When it comes to restaurants, the second biggest

22   issue is generally the dining.  Because if you can get inside

23   and you can't sit down at your table, obviously, you know,

24   getting inside isn't very good.  The third biggest issue,

25   although not always applicable, is the restroom.  You know,

1    everybody needs to use the restroom, and it can be

2    unpredictable, and so we -- that's generally the third issue

3    that we've seen.  Beyond that, we do see -- you know,

4    especially in these cases, we did see other minor smaller

5    issues that could either be addressed about without including

6    them in the settlement because they're very easy to remediate

7    or otherwise.

8          So with regard to Silver Tavern, we actually had, I

9    believe, all three of those issues.  I'm just pulling up the

10   complaint.  I'm sorry, I thought we were starting with 99

11   Franklin because it was calendar first.  The primary issues

12   in Silver Light that were addressed were in fact the

13   entrance, so there was a step issue in the entrance.  The

14   second issue addressed was the dining.  We requested that a

15   dining table be ADA compliant, at least one, and then the

16   third issue was in fact the restroom.  Here the restroom

17   wasn't a major concern because when it comes to restrooms,

18   the primary concern is whether a wheelchair can enter into

19   the restroom and actually turn around, so it's a clearance

20   issue.

21         Here, there was no clearance issue.  It was a few

22   minor issues.  If you read the complaint, you'll see that one

23   of the grab bars wasn't installed and the -- I believe it was

24   a locking mechanism that wasn't high enough or was too high.

25   I'm sorry.  I'll actually just refer to the complaint.  There

1   wasn't proper signage on the restroom door, on the exterior

2   of the restroom door identifying it as an ADA bathroom.  The

3   doorknob for the entrance to the restroom was not compliant

4   in that it required twisting of the wrist.  Disabled people

5   generally have trouble twisting circular doorknobs and

6   levered doorknobs are better suited.

7          The paper towel dispenser in the restroom was a

8   little too high.  These are all what we consider minor issues

9   or lesser issues, not that they're not important and that

10   they don't need to be addressed, but access to the premises

11   and the ability to sit and dine are the two most important

12   issues.  And then the restroom, when applicable, also is an

13   issue that we'd like to get addressed.  In this instance, my

14   client could not get inside.  When she went with William,

15   they encountered the steps and they could not even make it to

16   the interior of the premises.

17          Upon inspection, we discovered that there were in

18   fact several issues.  And like I said, in the

19   settlement -- in the complaint, we do list the remaining

20   issues, most of them I just went through.  The only one I

21   didn't is that there's also a non-accessible bar.  What we

22   did in the settlement agreement is instead of having the

23   defendants install a permanent ramp, what we did is we agreed

24   to a portable ramp.  And so it basically offers the same kind

25   of remediation, although it comes at a significantly lower

1   cost.

2          The ramp is only made effective, though, if it's

3   accompanied by signage and a buzzer at the entrance telling

4   individuals because the ramp isn't kept out there at all

5   times.  So it informs individuals like William, like Mrs.

6   Hennessy, that there is a ramp that will be brought out and

7   made available upon request, and that request is made by the

8   main carrier.  And so we felt that a portable ramp was a

9   reasonable and cost-effective remediation when it came to

10  access.

11         The second issue, as I said, was the dining.  And

12  so here, we have a restaurant that's not so big and so we

13  agreed to one table that would be made available to the table

14  persons, including plaintiffs, and would be available during

15  all working hours.  And to kind of piggyback on the bar

16  issue, instead of having the defendants drop down the bar to

17  a permissible height, which again, would be extremely costly,

18  we agreed to just keep the ADA table near the bar.  Now while

19  that's not referenced in here, it is a conversation that I

20  had with opposing counsel, and it is something that me and

21  opposing counsel have actually used in other settlements as

22  well.

23         Finally, we agreed that the restroom was

24  sufficiently large for a wheelchair to navigate in, and so

25  the lesser issues weren't included with the settlement

1    agreement, but we did agree to signage just to let

2    individuals in wheelchairs, like Mr. Hennessy, know that if

3    you try to get inside this restroom, you'll be able to.  And,

4    you know, I informed defendants' counsel, we don't need to

5    include these lesser issues for purposes of settlement, but

6    you should direct your clients to get around to getting those

7    other issues just so that when disabled people get inside,

8    like Mr. Hennessy, that they will be able to grab the grab

9    bars, that they'll be able to open the knobs themselves, and

10   so on and so forth.

11          And so we believe that the remediation as a whole

12   addressed the three major concerns.  They're reasonable and

13   cost-effective.

14          THE COURT:  Okay.  So thank you for that overview.

15   I also note, of course, that we have Mr. Hennessy's guardian

16   here, Ms. Josephine Hennessy.  Ms. Hennessy, are you

17   satisfied with the remediation that Mr. Levy described with

18   regard to this particular premises?  This is the Silver

19   Light; is that correct, Mr. Levy?

20          MR. LEVY:  Yes, Your Honor.

21          THE COURT:  Ms. Hennessy, are you satisfied with

22   the remediations that he was able to negotiate on behalf of

23   you and your son?

24          MS. HENNESSY:  Yes.  Yes, Your Honor.

25          THE COURT:  And in terms of the settlement

1   agreement itself, it's my understanding, Ms. Hennessy, that

2   the financial portion of the settlement is going to be going

3   straight to Mr. Levy for fees; is that correct, Mr. Levy?

4            MR. LEVY:  Yes, Your Honor.

5            THE COURT:  And is there any compensatory damages

6   or financial reward going to Ms. Hennessy on behalf of Mr.

7   Hennessy, Mr. Levy?

8            MR. LEVY:  No, Your Honor.  In this case, we

9   decided that remediations would be the focus.  We generally

10  put remediations before monetary, and in this case, it was

11  true, too.  So the entire amount went to our fees and costs.

12           THE COURT:  And Ms. Hennessy, you're aware,

13  correct, that the financial portion of this settlement is

14  earmarked for Mr. Levy and his firm to compensate them for

15  the costs and attorneys fees incurred in connection with the

16  case?

17           MS. HENNESSY:  Yes, Your Honor.

18           THE COURT:  And do you agree that that's in your

19  son's best interest in this particular matter?

20           MS. HENNESSY:  Yes, Your Honor.

21           THE COURT:  So I noticed that you, of course, held

22  a different hearing earlier in front of Judge Mann on these

23  same issues.  Ms. Hennessy, I'm just sort of curious, you

24  know, in terms of your goals in regard to working through

25  these cases with Mr. Levy, what are you seeking in terms of

1  these settlements?  What does a good result look like to you,

2  Ms. Hennessy?

3          MS. HENNESSY:  Your Honor, it's really just, you

4  know, being -- having access for William and myself to go out

5  and enjoy a meal.  William likes going out, and, you know, we

6  go to different areas.  So it's just really for his enjoyment

7  to be able to access a restaurant on any given day.

8          THE COURT:  And so having access is the main thing

9  that you're seeking to get out of these cases so that you can

10 take --

11         MS. HENNESSY:  Yeah.  Access and then him -- yeah,

12 him being able to obviously get in and being granted a table

13 where he can comfortably eat.

14         THE COURT:  Okay.  And Mr. Levy, you mentioned in

15 terms of the process by which the settlement was reached

16 here, that you were working with opposing counsel; is that

17 correct?

18         MR. LEVY:  Yes, Your Honor.

19         THE COURT:  And in your experience, you know, what

20 do you think you're sort of best day in court could have

21 looked like in this kind of a case if it had been fully

22 litigated, Mr. Levy?  How does the settlement compare to what

23 could have come if you had litigated it to the hilt?

24         MR. LEVY:  It would have been more to the book.

25 Instead of a portable ramp, we likely would have sought a

1   permanent structure.  While the portable ramp is a reasonable

2   solution, there's still an element of discrimination that Mr.

3   Hennessy and other disabled people would encounter.  You

4   know, they're basically treated differently, that they need

5   to actually request this.  That they need a -- I don't want

6   my client to come off as a burden to the employees, but they

7   would have to, you know, stop what they're doing, go get the

8   ramp, bring it outside, maybe give Mr. Hennessy looks like

9   really, you're making me do this in the middle of my shift.

10          You know, there's still an element of

11  discrimination that they could experience.  So if we were to

12  see this through to trial, I would certainly ask for a

13  permanent ramp.  When it comes to the dining, the requirement

14  is 5 percent of tables need to be ADA compliant.  So we would

15  strictly ask for 5 percent of the tables despite the

16  additional cost.  And then obviously when it came to the

17  bathroom, we would probably request a Rule 34 inspection and

18  find out just what's going on in there, because I'm sure with

19  a true expert, we would find that there were probably other

20  issues in the restroom we didn't acknowledge in the complaint

21  as well as other issues in the interior of the restaurant,

22  the remaining portions of the restaurant, all of which we

23  would seek at trial.

24          THE COURT:  Okay.  So you might have obtained

25  somewhat more robust remediation relief.  What about

 1  compensatory damages and fees and things?  How would that

 2  have compared.  I mean what type of damages other than, you

 3  know, sort of the garden-variety emotional distress damages

 4  would be appropriate here, Mr. Levy, based on your

 5  experience?

 6          MR. LEVY:  Statutory.  It would probably be $1,000

 7  under the Federal Rules and then another 500 under the state

 8  rules, so it would be about 15 --

 9          THE COURT:  So we're talking about -- I'm sorry, go

10  ahead.

11          MR. LEVY:  It would be $1,500.

12          THE COURT:  So we're talking about fairly minimal

13  compensatory?

14          MR. LEVY:  Yes, Your Honor.

15          THE COURT:  All right.  So, you know, having

16  reviewed the papers and having had an opportunity to review

17  your affidavit, Mr. Levy, and hearing directly from Ms.

18  Hennessy herself as to her goals with regard to this

19  particular litigation, I do find that the settlement terms

20  here, when compared to the prospect of recovery following

21  litigation, do appear to be fair and reasonable and adequate.

22  So I think that I am, you know, prepared as to this 1540

23  case, 22-CV-1540 case, to recommend approval of the dismissal

24  to Judge Amon.

25          I'm looking at the requirements of Rule 83.2, our

1  local civil rule, as well as CPLR 1208, and I'm also finding

2  that the record as a whole does establish the name and

3  relationship of Ms. Hennessy to her son.  We do know Mr.

4  Hennessy's name and age and base of residence.  We understand

5  the circumstances giving rise to the action, the nature and

6  extent of the damages suffered, and the terms and proposed

7  distribution of the settlement as well as the fact

8  surrounding the motion for approval of the settlement, and

9  whether or not there has been any compensation received.

10        So I do find that on the basis of the papers

11  previously submitted, as well as the additional information

12  deduced today, that the interest sought to be protected by

13  New York CPLR 1208 do seem to be satisfied here.  So thank

14  you for going through all of that, Mr. Levy, with regard to

15  this case.  In light of those circumstance, and on the basis

16  of the totality of the record, I will, you know, recommend to

17  Judge Amon that we can dispense with the formal requirement

18  of needing that supplemental affidavit, Mr. Levy, but I

19  appreciate that you did offer to submit after the hearing.

20        I'd now like to turn to the 1771 case.  Is there

21  anything else you'd like to add, Mr. Levy, in terms of the

22  1540 case and why we should find it to be fair and

23  reasonable?

24        MR. LEVY:  No, Your Honor.  I think we covered

25  everything.

1    THE COURT:  Okay.  Thank you very much.  With

2    regard to the 1771 case, similarly curious about the

3    circumstances of that settlement and why you believe it to be

4    fair and reasonable.

5    MR. LEVY:  So this settlement is slightly different

6    than the other.  I just want to give a little background

7    information.  The other case we just handled was defendants

8    were represented by counsel.  In this case, the defendants

9    were represented pro se, specifically the owner of the

10   restaurant, 99 Franklin Bar.  We went back and forth a couple

11   of times and the individual was pretty adamant about settling

12   without an attorney, which I'm always happy to do, but I

13   always advise that if at any time this gets too complicated,

14   we will stop everything.  We will get an attorney and we can

15   resume at that point.

16   But he wanted to settle, so I sent a proposed

17   remediation as well as the monetary demand, and we took it

18   from there.  Everything played out from there pretty much as

19   it did in the other case, which is especially true here

20   because the remediations are almost identical with the

21   exception of the bathroom.  In this case, there is no public

22   bathroom, so we didn't have to address that.  However, there

23   was a service counter that was too tall.  Unlike the bar in

24   the previous case where I said we can situate a table, the

25   issue isn't seating.  It's getting service at the counter.

1        So with regard to the first issue with the ramp, we

2   made a similar remediation.  We asked for a portable ramp in

3   lieu of a permanent structure as long as it's accompanied by

4   a conspicuous signage and a buzzer.  The second remediation

5   was again at the dining, and we asked for one ADA-compliant

6   table.  It does the trick and it's not overly burdensome.

7   Finally, we asked that when a disabled person like Mr.

8   Hennessy walked in, that instead of having their food or

9   whatnot placed on a countertop, that it be brought directly

10  to them.

11       The pro se party was happy to agree to that, and we

12  had a remediation boss down.  When it came to payment,

13  however, generally and unfortunately, when dealing with pro

14  ses, there's a bit more handholding, and if you look at the

15  fee statement, you'll see that that was especially true here.

16  We had several rounds of post-executed settlement agreement

17  discussions where I had to follow up about remediations and

18  payment.  Both were supposed to be complied with within six

19  months, and they were; however, there was a lot more back and

20  forth, a lot of reaching out from the pro se to my office

21  asking about whether this table or that table would be

22  sufficient, where to get a portable ramp from.  There was

23  also issues with payment and a couple of checks got lost in

24  the mail.  And there was a delay, which is fine.  It's not a

25  problem.

1      But when we do encounter pro ses, we do expect

2  additional work to go into it, and that's why this settlement

3  is slightly higher with regards to the payment as opposed to

4  the previous one that we just did.

5      THE COURT:  Okay.  And same questions that I asked

6  you earlier, Ms. Hennessy.  With regard to this particular

7  location, what was your goal in seeking to work toward

8  remediation with this location?

9      MS. HENNESSY:  Yes.  So again, Your Honor, it's

10  really just having access to be able to get into the

11  restaurant and being able to either sit at a table or having

12  it be convenient for the food to be eaten for both of us, I

13  mean William especially.

14      THE COURT:  Uh-huh.  And Mr. Levy went through, you

15  know, some of the process that he went through to work

16  towards the settlement.  Are you satisfied with the

17  remediation efforts that were agreed upon as a part of the

18  settlement?

19      MS. HENNESSY:  Yes.

20      THE COURT:  And are you fully aware that the

21  financial compensation that was negotiated here is going to

22  counsel for their work on the matter and to cover their costs

23  and their fees?

24      MS. HENNESSY:  Yes, Your Honor.

25      THE COURT:  And is that something that you've

1    agreed to?  You think that's in the best interest of these

2    cases?

3              MS. HENNESSY:  Yes, I do, Your Honor.

4              THE COURT:  Can I ask why?  Why do you think that's

5    in your son's best interest?

6              MS. HENNESSY:  Because basically our goal is to, as

7    I said before, to just be able to comfortably be able to get

8    into a restaurant and comfortably eat and enjoy our day.

9              THE COURT:  And Mr. Levy helped to facilitate that

10   when you find locations that you're having difficulty with

11   accessing with your son?

12             MS. HENNESSY:  Yes.

13             THE COURT:  Mr. Levy, how many actions are you

14   representing Mr. Hennessy in; do you know?

15             MR. LEVY:  Currently, I don't think we have any

16   active cases.

17             THE COURT:  Well, you have at least two.

18             MR. LEVY:  Well, yeah --

19             MS. HENNESSY:  That's true.

20             MR. LEVY:  There have been no new cases in quite

21   some time.  When Mr. Hennessy brings one to my attention,

22   then, you know, we'll get started on the paperwork after an

23   inspection, but there hasn't been anything lately.

24             THE COURT:  But generally speaking, Ms. Hennessy,

25   you're the one who identifies locations of concern and brings

1    to Mr. Levy's attention?

2            MS. HENNESSY:  Yes.  So if we're out and about, you

3    know, in any particular area, if I see that it's, you know,

4    obviously difficult to get in or inaccessible, yes, I confer

5    with Mr. Levy.

6            THE COURT:  And the retainer agreement that you

7    submitted on Mr. Levy, is that a standing retainer agreement

8    that you have with Mr. Levy?

9            MS. HENNESSY:  I believe so.

10           MR. LEVY:  It is.

11           THE COURT:  Okay.  And I also note that both of

12   these settlements, in both the 1540 case and the 1771 case,

13   the settlement agreement itself includes a confidentiality

14   provision.  Was that confidentiality provision material to

15   the bargain in your view, Mr. Hennessy -- I mean -- Mr.

16   Hennessy -- Mr. Levy?

17           MR. LEVY:  Okay.  So this is an interesting issue

18   and it came up in the last hearing as well.  Our position is

19   we don't mind if it's made public.  You know, we have nothing

20   to hide.  We are seeking the remediations.  We want my client

21   to have access.  We're not afraid of what the settlement

22   terms state.  However, these terms were negotiated over the

23   course of some time with me and opposing counsel and me and

24   the pro se, and so to that extent, I would prefer them to

25   be -- to remain confidential.  But if Your Honor finds that

1    in the public interest they're better suited to be made

2    public, I will respect that decision.

3           THE COURT:  Thank you.  I mean I did note that both

4    of them have a strict confidentiality provision, and, you

5    know, there is some interest, of course, in understanding

6    settlements, but many settlements are docketed -- they're

7    never docketed.  They're just reached by the parties and the

8    case is thereafter dismissed.  And so, you know, I'll take a

9    look at that question.

10          Is there anything else, Mr. Levy, that you would

11   like to add to the 1771 case?  One follow-up question just

12   for completion of the record, is your estimate of the

13   compensatory damages as to the situation involving the second

14   action, the 1771 case, similar to your estimate as in the

15   1540 case?

16          MR. LEVY:  Yes, Your Honor.  They would be

17   identical.

18          THE COURT:  Okay.  So we're talking about fairly

19   minimal compensatory damages under state and federal law and

20   the real and trust here as stated by Ms. Hennessy very

21   succinctly, which I really appreciate, Ms. Hennessy, is

22   you're seeking to have access so that you can take your son

23   places where you can enjoy your time together.

24          MS. HENNESSY:  Yes.

25          THE COURT:  All right.  Well, I appreciate you guys

1   hopping on the phone and providing that additional

2   information.  With regard to the second action, the action

3   involving the 99 Franklin Bar, what is the status of the

4   remediations, Mr. Levy?

5          MR. LEVY:  All the remediations have been

6   completed.

7          THE COURT:  Okay.  All right.  Well, I think that

8   those are all of our questions for now.  We will take the,

9   you know, take it from here in terms of preparing short

10  recommendations to Judge Amon, but as I noted with regard to

11  the first case, I do find that there is sufficient

12  information on the record to protect the interests sought to

13  be protected under Local Rule 83.2, and I'm not going to

14  direct you at this time, Mr. Levy, to file any follow-up

15  affidavits pursuant to 1208 as I do think we have basically

16  all the facts that 1208 is looking for just presented in a

17  slightly different order.  And we'll take it from there.  So

18  you can look out for our reports and recommendation in the

19  coming week or two.  All right?

20         MR. LEVY:  Yes.  Thank you, Your Honor.

21         THE COURT:  All right.  Thank you.  Is there

22  anything final that I should take up today, Mr. Levy?

23         MR. LEVY:  Nothing further.

24         THE COURT:  All right.  Thank you, both.  And thank

25  you, Ms. Hennessy.

1          MS. HENNESSY:  Thank you.

2          THE COURT:  Okay.  Have a good day.  Bye-bye.

3          MS. HENNESSY:  You, too.  Thank you.

4      (Proceedings adjourned at 11:02 a.m.)

5

6                    TRANSCRIBER'S CERTIFICATE

7          I certify that the foregoing is a correct

8  transcript from the electronic sound recording of the

9  proceedings in the above-entitled matter.

10

11                                   February 16, 2023

12

13  _____    _____

14  Courtney Montgomery                         DATE

15  Legal Transcriber

16

17

18

19

20

21

22

23

24

25

Superior Reporting LLC
P.O. Box 5032 Maryville, TN 37802
transcripts@superiorreporter.com